**JENNER v. ECOPLUS, INC.**

[224 N.C. App. 275 (2012)]

MATTHEW JENNER AND JULIA MARKSON, PLAINTIFFS
v.
ECOPLUS, INC., DEFENDANT

No. COA12-719

Filed 18 December 2012

**1. Enforcement of Judgments—motion to recognize—North Carolina Uniform Foreign-Country Money Judgments Recognition Act**

Plaintiffs' motion to recognize a foreign-country money judgment was properly before the trial court. The North Carolina Uniform Foreign-Country Money Judgments Recognition Act (Act) does not require that a defendant be given an opportunity to file an answer before a trial court may hold a hearing in the matter. Defendant received "a court proceeding" in which it had the opportunity to oppose recognition as required by the Act.

**2. Enforcement of Judgments—foreign-country money judgment—burden of proof—ground for nonrecognition**

The trial court erred in an action to recognize a foreign-country money judgment by not requiring defendant to carry the burden of proving the existence of a ground for nonrecognition. Further, defendant did not appeal from the default judgment entered by the English court, the mechanism for correcting the purported error defendant now alleged.

Appeal by Plaintiffs from order and judgment entered 28 March 2012 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 15 November 2012.

*Kilpatrick Townsend & Stockton LLP, by Richard D. Dietz, Adam H. Charnes, Thurston H. Webb, and Daniel M. Vandergriff, for Plaintiffs.*

*John F. Hanzel and David A. Grassie for Defendant.*

STEPHENS, Judge.

*Factual and Procedural History*

Plaintiffs Matthew Jenner and Julia Markson are citizens and residents of the United Kingdom. Defendant Ecoplus, Inc. is a Wisconsin corporation with its principal place of business in Huntersville, North Carolina. In May 2008, Defendant executed separate loan agreements

with each Plaintiff for $150,000. Defendant defaulted on the loans, and on 15 February 2011, Plaintiffs filed suit in the United States District Court for the Western District of North Carolina alleging a breach of the loan agreements. On 14 March 2011, Defendant moved to dismiss for improper venue, citing a forum selection clause in the loan agreements specifying the courts of England and Wales as the exclusive forum and venue for any legal actions arising thereunder.

On 28 March 2011, the parties stipulated to a dismissal without prejudice, agreeing that Plaintiffs would re-file the claim in an English court. On 10 May 2011, Plaintiffs re-filed their claim against Defendant in the High Court of Justice, Queen's Bench Division, in London, England. On 23 May 2011, Plaintiffs served Defendant with the complaint as well as an informational leaflet from the English court system stating that Defendant had 22 days to either respond to the claims or request an extension of up to 36 days. Defendant did not answer the complaint or request an extension. As a result, on 21 June 2011, the English court entered a default judgment in favor of Plaintiffs. Defendant did not appeal the judgment or take any further action in the English court system.

On 17 January 2012, pursuant to the North Carolina Uniform Foreign-Country Money Judgments Recognition Act ("the Recognition Act" or "the Act"), N.C. Gen. Stat. § 1C-1850 et seq. (2011), Plaintiffs filed a Complaint to Recognize a Foreign-Country Money Judgment in the Mecklenburg County Superior Court. On 23 January 2012, Plaintiffs filed a Motion to Recognize a Foreign-Country Money Judgment and sought a hearing on the motion. On 24 January 2012, the trial court granted Defendant an extension until 20 March 2012 to file an answer to the complaint. On 26 January 2012, Plaintiffs noticed the hearing on their motion for 12 March 2012. On 17 February 2012, Defendant filed a motion to strike or, in the alternative, for relief from Plaintiff's motion. In that motion, Defendant asserted (1) that the Act required the issue of recognition of a foreign-country money judgment be raised by complaint, cross-claim, or affirmative defense, rather than by motion; (2) that, because Plaintiffs initially raised the issue of recognition by filing a complaint, Defendant was entitled to sufficient time to respond; (3) that the time for filing Defendant's answer had been extended to 20 March 2012; and (4) that ruling on the motion at the hearing set for 12 March would improperly deny Defendant an opportunity to respond to the complaint. On these grounds, Defendant asked that Plaintiffs' motion be stricken or that Defendant be granted relief from the motion. Defendant did not seek a continu-

ance of the hearing on Plaintiffs' motion or an adjudication on the merits of the case.

At the 12 March 2012 hearing, the parties disagreed about the nature of Plaintiffs' motion. Plaintiffs sought immediate recognition of the English judgment, contending that the Act was intended to provide a speedy and efficient manner in which to recognize foreign-country money judgments. Defendant countered that a decision on the merits would be "premature" because the time the trial court granted Defendant to answer the complaint had not expired. Defendant made no substantive argument under the Act, *i.e.*, that one or more of the grounds existed for not recognizing the English judgment.

At the end of the hearing, the trial court found *sua sponte* that, because the informational leaflet from the English court system appeared to give Defendant 36 days to respond to the complaint, and only 28 days had elapsed between service of the complaint on Defendant and entry of the default judgment in favor of Plaintiffs, "that judgment was entered prematurely." In open court, the trial court denied Plaintiffs' motion to recognize the foreign-country judgment. On 28 March 2012, the trial court filed an order and judgment denying Plaintiffs' motion and entering judgment in favor of Defendant. Plaintiffs appeal.

## Discussion

Plaintiffs make four arguments on appeal: that (1) the trial court erred by finding that the English court had entered judgment prematurely, (2) the trial court erred by not requiring Defendant to carry the burden of nonrecognition and failing to make appropriate findings of fact and conclusions of law, (3) the trial court's ruling could endanger litigants' ability to enforce North Carolina judgments abroad, and (4) the trial court's ruling violates well-settled principles of comity and respect for other courts. Defendant argues, *inter alia*, that the Motion to Recognize a Foreign-Country Money Judgment was not properly before the trial court. We reverse and remand.

## Standard of Review

"Questions of statutory interpretation are questions of law, which are reviewed *de novo* by an appellate court." *In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 559, 589 S.E.2d 179, 180 (2003) (citation omitted).

> Legislative intent controls the meaning of a statute. To
> determine legislative intent, a court must analyze the

statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish. First among these considerations, however, is the plain meaning of the words chosen by the legislature; if they are clear and unambiguous within the context of the statute, they are to be given their plain and ordinary meanings. The Court's analysis therefore properly begins with the words themselves.

. . . .

Where a statute is ambiguous, judicial construction must be used to ascertain the legislative will. The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent.

*Brown v. Flowe*, 349 N.C. 520, 522, 523, 507 S.E.2d 894, 895-96 (1998) (citation and quotation marks omitted). Further, our Supreme Court

has noted that the commentary to a statutory provision can be helpful in some cases in discerning legislative intent. *State v. Bogle*, 324 N.C. 190, 376 S.E.2d 745 (1989); *State v. Hosey*, 318 N.C. 330, 348 S.E.2d 805 (1986). In *Bogle* this Court noted that since the commentary printed with the North Carolina Rules of Evidence was not enacted into law, it was not binding but, where proper, could be given substantial weight in our efforts to discern legislative intent. *Bogle*, 324 N.C. at 202-03 n.5, 376 S.E.2d at 752 n.5.

*Parsons v. Jefferson-Pilot Corp.*, 333 N.C. 420, 425, 426 S.E.2d 685, 689 (1993).

## I. *Plaintiffs' Motion to Recognize the Foreign Judgment*

[1] We first consider whether Plaintiffs' Motion to Recognize a Foreign-Country Money Judgment was properly before the trial court. We hold that it was.

The Recognition Act provides that "[i]f recognition of a foreign-country judgment is sought as an original matter, the issue of recognition shall be raised by filing an action seeking recognition of the foreign-country judgment[,]" and "[i]f recognition or nonrecognition of a foreign-country judgment is sought in some other action, the issue of recognition may be raised by complaint, counterclaim, cross-

claim, or affirmative defense." N.C. Gen. Stat. § 1C-1855 (a), (b) (2011). The Act does not expressly provide that a party may, by motion, request a court to recognize a foreign judgment, and the Act "is not intended to create any new procedure not currently existing in the state or to otherwise effect existing state procedural requirements." *Id.* cmt. 4. However, the legislative history of the Recognition Act persuades us that the General Assembly did not intend that an action to merely *recognize* a foreign judgment be as procedurally involved as a civil action seeking an adjudication on the merits of a claim.

The forerunner to the Recognition Act, the North Carolina Foreign Money Judgments Recognition Act, N.C. Gen. Stat. § 1C-1800 *et seq.* (1962) (repealed 2009), "was silent as to the proper procedure for seeking recognition of a foreign-country judgment[.]" N.C. Gen. Stat. § 1C-1855, cmt. 1. In the new Recognition Act, the drafters acknowledged that foreign-country judgments, in contrast to sister-state judgments, are not subject to the Full Faith and Credit Clause of the federal Constitution and may come from judicial systems that differ significantly from those in the United States. The Official Comment explains that "[t]hese differences between sister-state judgments and foreign-country judgments provide a justification for requiring judicial involvement in the decision whether to recognize a foreign-country judgment in all cases in which that issue is raised." *Id.*

The new Act does not, however, expressly require that a trial court receive a defendant's answer before determining whether to recognize a foreign judgment. The Official Comment merely states that "the issue of recognition always must be raised in a court proceeding." *Id.* In other words, although the Act requires *some* judicial oversight, we do not believe the Act's drafters intended that the full constellation of judicial procedure found in other civil actions be utilized. We note that the Recognition Act is a statute of inclusion with a strong presumption that foreign-country judgments will be recognized. The Act provides that, "[e]xcept as otherwise provided in this section, a court of this State *shall* recognize a foreign-country judgment to which this Article applies." *Id.* § 1C-1853(a) (emphasis added). According to the Official Comment, absent a recognized exception, the Act "places an *affirmative duty* on the forum court to recognize a foreign-country money judgment[.]" *Id.* cmt. 3 (emphasis added). On the other hand, North Carolina courts must *not* recognize a foreign-country judgment if it was rendered by an unfair judicial system that does not provide adequate due process, or if the foreign court lacked subject matter jurisdiction or personal jurisdiction over

the defendant. *Id.* § 1C-1853(b). Further, the Recognition Act contemplates various circumstances in which a court must deny recognition unless the court concludes as a matter of law that recognition would still be reasonable. *Id.* § 1C-1853(c). "A party *resisting* recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition stated in . . . this section exists." *Id.* § 1C-1853(g) (emphasis added).

Entry of an order recognizing a foreign-country judgment is merely a preliminary step to enforcement. Once such a judgment is recognized, a plaintiff must still satisfy the Uniform Enforcement of Foreign Judgments Act, N.C. Gen. Stat. § 1C-1701 et seq. (2011). *See Maxwell Schuman & Co. v. Edwards*, 191 N.C. App. 356, 358, 663 S.E.2d 329, 331 (2008) ("The [Recognition Act] does not govern the enforcement of foreign judgments. Instead, it pertains only to whether a court should recognize the judgment. Enforcement of judgments is governed by the [Enforcement Act].") (citations and quotation marks omitted)). To require full civil proceedings under both statutes may unduly burden plaintiffs seeking to enforce a legitimate judgment from a foreign country in North Carolina.

In light of the history of and legislative intent behind the Recognition Act, we hold that Plaintiffs' motion was properly before the trial court. Plaintiffs initiated the action via complaint, in accordance with section 1C-1855, and then noticed a hearing at which Defendant had an opportunity to satisfy its burden in support of nonrecognition under section 1C-1853(g). Defendant did not seek a continuance, but appeared at the hearing and argued only that Plaintiffs' motion was premature. Defendant chose not to present any evidence or argument that an exception permitting nonrecognition applied to Plaintiffs' foreign-country judgment.

In sum, we conclude that the Act does not require that a defendant be given an opportunity to file an answer before a trial court may hold a hearing in the matter. Here, Defendant unquestionably received "a court proceeding" in which it had the opportunity to oppose recognition as required by the Act. Accordingly, Plaintiffs' motion was properly before the trial court.

## II. *Burden of Proof*

[2] Plaintiffs argue that the trial court erred by not requiring Defendant to carry the burden of proving the existence of a ground for nonrecognition. We agree.

**JENNER v. ECOPLUS, INC.**

[224 N.C. App. 275 (2012)]

As discussed above, the Recognition Act places the burden of proving the existence of a ground for nonrecognition squarely on the defendant. § 1C-1853(g). At the hearing, Defendant made no argument at all opposing recognition; rather, it argued only that Plaintiffs' motion was premature because Defendant's time in which to file an answer had not yet elapsed. Because Defendant offered not the slightest evidence or argument to satisfy its burden of proof in opposing recognition, the trial court had no basis under the Recognition Act to deny recognition and enter final judgment in favor of Defendant. To the contrary, once the hearing was concluded without presentation of evidence or argument that one of the Act's limited exceptions applied, the trial court was obligated to recognize the judgment.

Finally, we note that, even had Defendant properly argued in support of its burden in the trial court, it would not likely have prevailed. The only contention Defendant made in this Court to support nonrecognition was that the English court misapplied its own rules of civil procedure and entered the default judgment prematurely. As a result, Defendant asserted that the English judgment could be "shoehorned" into the exception found in section 1C-1853(c)(8): "The specific proceeding in the foreign court leading to the judgment was fundamentally unfair." We believe a shoehorn would be a woefully inadequate tool with which to fit an alleged procedural error by the English court into the category of "fundamentally unfair." The Act's Official Comment 12 provides an instructive example of when a specific proceeding might be considered "fundamentally unfair": "that for political reasons the particular party against whom the foreign-country judgment was entered was denied fundamental fairness in the particular proceedings leading to the foreign-country judgment." § 1C-853 cmt. 12. There is no suggestion of political corruption in the foreign judgment here. More importantly, Official Comment 12 goes on to specifically note that

> a forum court might decide not to exercise its discretion to deny recognition despite evidence of corruption or procedural unfairness in a particular case *because the party resisting recognition failed to raise the issue on appeal from the foreign-country judgment in the foreign country, and the evidence establishes that, if the party had done so, appeal would have been an adequate mechanism for correcting the transgressions of the lower court.*

*Id.* (emphasis added). Here, as noted *supra*, Defendant did not appeal from the default judgment entered by the English court, the simple and entirely adequate mechanism for correcting the purported error it now alleges.

We reverse and remand to the trial court for entry of an order recognizing Plaintiffs' English court judgment.

REVERSED and REMANDED.

Judges GEER and MCCULLOUGH concur.