NO. 13-1049

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

MARK R. PATMORE; MERCIA
RESIDENTIAL PROPERTIES, LLC;
WILLIAM T. GARTLAND; and
318 BROOKS LLC,

    Plaintiffs,

    v.                                    Orange County
                                        No. 12 CVS 1766
TOWN OF CHAPEL HILL
NORTH CAROLINA,

    Defendant.

Appeal by plaintiffs from order entered 4 June 2013 by Judge W. Osmond Smith, III, in Orange County Superior Court. Heard in the Court of Appeals 4 February 2014.

> *The Brough Law Firm, by G. Nicholas Herman, for plaintiff-appellants.*

> *Parker Poe Adams & Bernstein, LLP, by Anthony Fox, and Benjamin R. Sullivan, for defendant-appellee.*

STEELMAN, Judge.

Where defendant enforced a zoning amendment by citing the owners of rental properties rather than their tenants because it was a more effective method of enforcement, their enforcement

against property owners was rationally related to the purpose of the zoning restriction and did not violate plaintiffs' right to substantive due process. N.C. Gen. Stat. § 160A-301 governs a municipality's authority to regulate parking in public vehicular areas, while the zoning amendment was a land use restriction intended to curb over-occupancy of rental properties by limiting the number of cars parked on a rental property. Because the zoning amendment and N.C. Gen. Stat. § 160A-301 do not address the same subject, the principle of *expressio unius est exclusio alterius* does not apply. *Lanvale Properties, LLC v. County of Cabarrus*, 366 N.C. 142, 731 S.E.2d 800, *reh'g denied*, 366 N.C. 416, 733 S.E.2d 156 (2012), held that an ordinance was not a zoning ordinance, and did not change the law governing the requirements for a valid zoning ordinance.

## I. Factual and Procedural Background

Defendant Town of Chapel Hill enacted a zoning ordinance as part of its Land Use Management Ordinance. One of the zoning districts created is the Northside Neighborhood Conservation District (NNC district), a residential neighborhood located near the campus of UNC-Chapel Hill. Special design standards apply to development in the NNC district and govern such things as maximum building height and the bedroom to bathroom ratio of rental houses. Despite the standards in the zoning ordinance,

over-occupancy, or rental to a greater number of tenants than bedrooms, was a "significant problem" in the NNC district for several years, and was associated with a number of problems, including parking and traffic congestion, excess garbage, and "significantly higher complaints of violations" of town regulations than in other town residential neighborhoods.

Defendant's planning department determined that although "it is not a perfect measure, the number of vehicles parked on a residential lot in the [NNC] is a reasonable approximation of how many people are living at the property." After conducting a public hearing to address "the community's concerns about student rental," the Town Council adopted an amendment to the zoning ordinance that limited the number of cars that may be parked on a residential lot in the NNC district to four cars. The amendment was adopted on 9 January 2012 and took effect on 1 September 2012. The amendment is applied to both owner-occupied and rental properties. If a property is rented, the amendment is enforced by citing the owner of the property for violations, rather than the tenants. Plaintiffs are property owners who rent houses in the NNC district and were cited for violation of the amendment. Plaintiffs do not dispute that their properties were in violation of the ordinance.

On 27 November 2012 plaintiffs filed a complaint and an application for declaratory judgment and permanent injunction. Plaintiffs alleged that defendant enforced the zoning amendment "solely against the owner(s) of record of the real properties subject to the Zoning Regulation" "without any determination as to the reason for the parking of those cars" and that plaintiffs were not "in any position to control the number of cars parked" on the properties that they owned and rented. Plaintiffs asserted that the zoning amendment was "unlawful, *ultra vires*, and void" and that "its enforcement and application is unreasonable, arbitrary and capricious, and violates Article I § 19 of the North Carolina Constitution and substantive due process[.]" On 7 December 2012 plaintiffs filed an amended complaint seeking either "a judgment declaring the Zoning Regulation unlawful, void and unenforceable, and permanently enjoin[ing] the enforcement of the Zoning Regulation" or an injunction "permanently enjoin[ing] the enforcement of the Zoning Regulation against property owners who have no knowledge of and/or have taken no action to create or maintain any violation of the Zoning Regulation[.]" In its answer to the amended complaint, defendant admitted citing plaintiffs for violation of the zoning amendment, but denied plaintiffs' allegations concerning their ability to control the number of

cars on their properties, and moved for dismissal of plaintiffs' complaint under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Defendant and plaintiffs filed cross-motions for summary judgment on 22 and 28 May 2013, respectively. The parties' summary judgment motions were heard by the trial court on 3 June 2013, and on 4 June 2013 the trial court entered an order granting summary judgment in favor of defendant.

Plaintiffs appeal.

## II. Standard of Review

Under N.C. Gen. Stat. § 1A-1, Rule 56(a), summary judgment is properly entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." "In a motion for summary judgment, the evidence presented to the trial court must be admissible at trial, N.C.G.S. § 1A-1, Rule 56(e) (2003), and must be viewed in a light most favorable to the non-moving party." *Howerton v. Arai Helmet, Ltd*., 358 N.C. 440, 467, 597 S.E.2d 674, 692 (2004) (citing *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975)). "We review a trial court's order granting or denying summary judgment *de novo*. 'Under a *de novo* review, the

court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

### III. N.C. Constitution Art. I § 19

In their first argument, plaintiffs contend that the "enforcement and application" of the zoning amendment "against Plaintiffs violates substantive due process under Article I, Section 19 of the North Carolina Constitution, the Law of the Land Clause" "because the ordinance is enforced exclusively based on the existence of more than four parked cars on a lot without any determination as to the reason for the parking of those cars." We disagree.

N. C. Constitution Art. I, § 19 provides that:

> No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

"The term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with 'due process of law' as used in the Fourteenth Amendment to the

Federal Constitution." *In re Moore*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976) (citing *Surplus Store, Inc. v. Hunter*, 257 N.C. 206, 125 S.E. 2d 764 (1962)).

"Due process has come to provide two types of protection for individuals against improper governmental action, substantive and procedural due process." *State v. Bryant*, 359 N.C. 554, 563-64, 614 S.E.2d 479, 485 (2005) (citing *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998). "'The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.'" *Johnston v. State*, __ N.C. App. __, __, 735 S.E.2d 859, 875, (2012) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548, 556 (1972)), *aff'd* __ N.C. __, 749 S.E.2d 278 (2013). In this case, plaintiffs do not allege the deprivation of a constitutionally protected interest. Rather, plaintiffs assert a violation of their right to substantive due process.

"Substantive due process is a guaranty against arbitrary legislation, demanding that the law be substantially related to the valid object sought to be obtained." *Lowe v. Tarble*, 313 N.C. 460, 461, 329 S.E.2d 648, 650 (1985) (citing *State v. Joyner*, 286 N.C. 366, 211 S.E. 2d 320 (1975)). "Similar to the

rational basis test for equal protection challenges, 'as long as there could be some rational basis for enacting [the statute at issue], this Court may not invoke [principles of due process] to disturb the statute.'" *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 181, 594 S.E.2d 1, 15 (2004) (quoting *Lowe*, 313 N.C. at 462, 329 S.E.2d at 650) (alterations in *Rhyne*). "If the challenging party cannot prove that the statute bears no rational relationship to any legitimate government interest, the statute is valid." *Liebes v. Guilford Cnty. Dep't of Pub. Health*, 213 N.C. App. 426, 429, 724 S.E.2d 70, 73 (citing *State v. Fowler*, 197 N.C. App. 1, 26, 676 S.E.2d 523, 544 (2009), *disc. review denied*, 364 N.C. 129, 696 S.E.2d 695 (2010)), *disc. review denied*, 365 N.C. 361, 718 S.E.2d 396 (2011). Plaintiffs concede that their complaint "does not challenge the ordinance on any substantive due process ground that the ordinance was enacted without any conceivable rational relationship to a legitimate governmental objective." "Instead, Plaintiffs challenge the ordinance on the ground" that "enforcement of the ordinance solely against non-culpable landowner-lessors is arbitrary and capricious in violation of [Art.] I, [§] 19 of the North Carolina Constitution[.]"

Although plaintiffs characterize themselves as "non-culpable" and assert that they have no ability to control the

number of cars on their rental properties, they failed to submit any affidavits or other evidence addressing this issue. Furthermore, plaintiffs proffered leases establishing that they have a number of mechanisms for enforcing the terms of such agreements, including eviction, indemnification, and security deposits. Therefore, we do not consider plaintiffs' allegations regarding their "innocence" or their inability to enforce the terms of the leases executed with their tenants, as these assertions were not supported by affidavits before the trial court. Moreover, plaintiffs have not challenged defendant's determination that the number of cars on a lot generally indicates the number of residents, which we accept as accurate for purposes of this appeal.

Plaintiffs do not allege that enforcement of the zoning amendment implicated a fundamental right, protected class, or denial of their right to equal protection. Instead, plaintiffs assert, without citation to authority, that "the enforcement of the Town's ordinance solely against owners or lessors of property, based solely on the existence of more than four cars on a lot and irrespective of the actual reasons for and person(s) who caused or permitted the violation, is entirely irrational, arbitrary and capricious." However, as discussed above, the zoning amendment was enacted to address the problem

of over-occupancy of rental houses, and thereby reduce the problems associated with over-occupancy. Plaintiffs do not dispute that over-occupancy leads to other problems, or that decreasing the over-occupancy of rental properties is a valid goal of a zoning ordinance. In addition, in support of their summary judgment motion, defendant submitted the affidavit of Judy Johnson, defendant's Senior Planner in the town's Planning Department, which averred that:

> When the parking regulation at issue is violated with respect to a [rental] property . . . the Town cites the Property's owner for the violation rather than the tenants. Trying to cite tenants and enforce the parking regulation directly against them would be burdensome, impractical, and ineffective. Based on my years of experience with enforcing zoning regulations, compared to property owners, tenants tend to be more transient and difficult to locate, and many District tenants are students who are not permanent residents of the Town. If the Town issued citations to tenants, it often would be difficult to locate those tenants once they moved out of the District, and it would be administratively difficult to collect fines from such tenants if they no longer lived in Town or even in the State of North Carolina. By comparison, someone who owns property in the District will generally be easier to locate for purposes of issuing citations and enforcing zoning regulations. And, because a property owner will have a lease with his or [her] tenants, the owner can use his authority under the lease to help ensure that tenants comply with the parking regulations. As a result, enforcing the parking regulation against property owners instead of against tenants makes the

> regulation <u>more effective</u> and reduces the Town's administrative burdens and costs in enforcing the regulation.

(emphasis added). Defendant also submitted the affidavit of Chelsea Laws, defendant's Senior Code Enforcement Officer, who averred that:

> Based on my experience as a Senior Code Enforcement Officer for the Town, enforcing the new parking regulation against property owners is less burdensome and difficult, and <u>more effective</u>, than it would be to enforce the regulation against tenants. Tenants tend to change their places of residence frequently. This is especially true of students, who represent a significant portion of the tenants in the NNC District. In contrast with tenants, owners of District properties . . . are easier to locate. This make it less burdensome and more effective to enforce zoning regulations and penalties against the owners rather than against tenants, as the tenants may be hard to locate and may move away without paying any penalties assessed against them for violating Town regulations.

(emphasis added). These affidavits, which were tendered by defendant's employees with experience in enforcing zoning regulations, state that enforcement of the zoning amendment against property owners was more effective than trying to track down transient student tenants. We hold that the increased effectiveness of this enforcement mechanism is rationally related to the goal of decreasing over-occupancy in the NNC district. "On its face, the practice of more avidly enforcing

the Code against owners of property in the City than against their relatively transient tenants appears to be reasonably calculated to efficiently and effectively secure compliance with the Housing Code." *Cunningham v. City of E. Lansing*, 2001 U.S. Dist. LEXIS 15967, *7-8 (W.D. Mich. Sept. 28, 2001).

Plaintiffs do not dispute that it is more effective to enforce the zoning amendment against property owners than their tenants, but simply argue that it is wrong to impose liability on property owners for the number of cars parked on a rental property without proof that the landlord had "knowledge of the violation or any ability to prevent or correct the violation." Plaintiffs' argument is that an alternative enforcement plan might have been fairer to them. However, "[a] duly adopted zoning ordinance is presumed to be valid. The burden is on the complaining party to show it to be invalid. 'When the most that can be said against such ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere.'" *Graham v. City of Raleigh*, 55 N.C. App. 107, 110, 284 S.E.2d 742, 744 (1981) (quoting *In re Appeal of Parker*, 214 N.C. 51, 55, 197 S.E. 706, 709 (1938)). We conclude that the zoning amendment did not violate plaintiffs' rights to substantive due process of law. This argument is without merit.

### III. N.C. Gen. Stat. § 160A-301

In their next argument, plaintiffs contend that the zoning amendment "is invalid as being unauthorized under N.C. Gen. Stat. § 160A-301." We disagree.

N.C. Gen. Stat. § 160A-301 is part of Chapter 160A Article 15, "Streets, Traffic and Parking," and provides that a city "may by ordinance regulate, restrict, and prohibit the parking of vehicles on the public streets, alleys, and bridges within the city." The statute addresses a city's authority to "regulate the use of lots, garages, or other facilities owned or leased by the city and designated for use by the public as parking facilities," or to "regulate the stopping, standing, or parking of vehicles in specified areas of any parking areas or driveways of a hospital, shopping center, apartment house, condominium complex, or commercial office complex, or any other privately owned public vehicular area[.]" Plaintiffs contend that the fact that N.C. Gen. Stat. § 160A-301 only addresses a city's authority to regulate parking in public vehicular areas represents a legislative intent to prohibit municipalities from regulating parking on private property, and that "the doctrine of *expressio unius est exclusion alterius* forecloses" any argument that defendant had the authority to enact the zoning amendment. We do not agree.

"Under the doctrine of *expressio unius est exclusio alterius*, when a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list." *Evans v. Diaz*, 333 N.C. 774, 779-80, 430 S.E.2d 244, 247 (1993) (citations omitted). However, "the canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168, 123 S. Ct. 748, 760, 154 L. Ed. 2d 653, 671 (2003) (quoting *United States v. Vonn*, 535 U.S. 55, 65, 152 L. Ed. 2d 90, 122 S. Ct. 1043 (2002).

"The foremost task in statutory interpretation is 'to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise.'" *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (quoting *Spruill v. Lake Phelps Vol. Fire Dep't, Inc.*, 351 N.C. 318, 320, 523 S.E.2d 672, 674 (2000)) (internal quotation omitted). In this regard, we note that the ordinary meaning of "park" is to "put or leave (a vehicle) for a time in a certain location." *The American Heritage College Dictionary* 993 (3rd.

ed. 1997). N.C. Gen. Stat. § 160A-301 clearly deals with regulation of parking in this ordinary sense of the word.

However, the zoning amendment was "drafted to help address the [NNC] neighborhood's over-occupancy problem directly." Defendant's planning department found that "the number of vehicles parked on a residential lot" provided a "reasonable approximation of how many people are living at the property" and determined that "[l]imiting the number of parked cars therefore helps limit over-occupancy" without "trying to count and limit the number of occupants directly." We conclude that, although the parties have referred to the zoning amendment as a "parking" regulation, the context establishes that the amendment was intended to regulate the ratio of bedrooms to tenants in rental properties in the NNC District by restricting the number of vehicles parked in the yard.[1]

We hold that regulation of parking in public vehicular areas is fundamentally different from zoning restrictions on the

---

[1] The zoning amendment was enacted to increase compliance with the zoning ordinance's restrictions on over-occupancy of rental properties, by using the number of cars in a yard as an indication of the number of tenants. Plaintiffs have not challenged the general accuracy of this measure, or asserted that in any specific instance the house where excess cars were parked was <u>not</u> over-occupied. Given this factual scenario, we are not called upon to express an opinion concerning whether it would be a valid defense to a citation that the number of cars on a property <u>did not</u> indicate the number of tenants, but instead were cars belonging to temporary visitors.

number of cars that may be parked on a private lot by tenants of a house, and that there is no basis for assuming that our General Assembly intended legislation allowing a city to regulate parking in public vehicular areas to diminish a town's authority to adopt land use zoning regulations that deal with population density or over-occupancy of rental homes. The fact that defendant chose to restrict the number of cars parked on a lawn as a rough proxy for the number of tenants does not transform this into a "parking" ordinance within the meaning of N.C. Gen. Stat. § 160A-301. We hold that the doctrine of *expressio unius est exclusio alterius* is not applicable to the relationship between N.C. Gen. Stat. § 160A-301 and the zoning amendment.

For similar reasons, we reject plaintiffs' argument that N.C. Gen. Stat. § 160A-301 is a more "specific" statute that renders the provisions of N.C. Gen. Stat. § 160A-4 inapplicable. Defendant cites N.C. Gen. Stat. § 160A-4, "Broad Construction," which provides that:

> It is the policy of the General Assembly that the cities of this State should have adequate authority to execute the powers, duties, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter and of city charters shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or

expedient to carry them into execution and effect[.]

Defendant contends that N.C. Gen. Stat. § 160A-4 should be applied to N.C. Gen. Stat. § 160A-383, which provides in relevant part that:

> Zoning regulations shall be designed to promote the public health, safety, and general welfare. To that end, the regulations may address, among other things, the following public purposes: to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to lessen congestion in the streets; to secure safety from fire, panic, and dangers; and to facilitate the efficient and adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. . . .

Defendant asserts that its zoning amendment was "reasonably necessary" to achieve its statutorily approved purpose of regulating population density and traffic congestion. Plaintiffs do not dispute this contention, but argue that because N.C. Gen. Stat. § 160A-301 deals specifically with parking, the general rule stated in N.C. Gen. Stat. § 160A-4 is not applicable, based on the longstanding "principle 'that where there are two opposing acts or provisions, one of which is special and particular and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter, and thus conflict with the special act or

provision, the special must be taken as intended to constitute an exception to the general act.'" *Blair v. Commissioners*, 187 N.C. 488, 489-90, 122 S.E. 298, 299 (1924) (quoting *State v. Johnson*, 170 N.C. 685, 690, 86 S.E. 788, 791 (1915) (other citation omitted). "[T]o the extent of any necessary repugnancy between them, the special statute . . . will prevail over the general statute." *Krauss v. Wayne Cty. Dep't of Soc. Servs.*, 347 N.C. 371, 378, 493 S.E.2d 428, 433 (1997) (internal quotation omitted). However, we have held that the zoning amendment, which addresses the number of vehicles that may be parked on a private lot, does not address the same subject as N.C. Gen. Stat. § 160A-301, which governs ordinary parking on public vehicular areas. Therefore, N.C. Gen. Stat. § 160A-301 is not a more "specific" statute, but simply addresses a different subject.

## IV. *Lanvale Properties, LLC v. County of Cabarrus*

In their next argument, plaintiffs contend that the decision of our Supreme Court in *Lanvale Properties, LLC v. County of Cabarrus*, 366 N.C. 142, 731 S.E.2d 800 (2012), "establishes that the instant parking regulation is not authorized by the general zoning power." We disagree.

*Lanvale* arose from Cabarrus County's enactment of an "adequate public facilities ordinance ('APFO') that effectively conditions approval of new residential construction projects on

developers paying a fee to subsidize new school construction to prevent overcrowding in the County's public schools." *Lanvale*, 366 N.C. at 143, 731 S.E.2d at 803. Defendant appealed from the trial court's entry of summary judgment in favor of plaintiff-developer and from its ruling that defendant did not have the authority under zoning or subdivision statutes to enact an APFO. This Court affirmed the trial court, and defendant appealed to our Supreme Court, arguing that it was authorized under its general zoning power to adopt the APFO. The Supreme Court first addressed the "distinction between zoning ordinances and subdivision ordinances[,]" and observed that "the primary purpose of county zoning ordinances is to specify the types of land use activities that are permitted, and prohibited, within particular zoning districts." *Lanvale* at 157-58, 731 S.E.2d at 811-12 (citing *Chrismon v. Guilford County*, 322 N.C. 611, 617, 370 S.E.2d 579, 583 (1988)). Based upon its review of the characteristics of zoning regulations, the Court held that "the APFO does not define the specific land uses that are permitted, or prohibited, within a particular zoning district" and that "the County's APFO cannot be classified as a zoning ordinance because . . . [it] simply does not 'zone.'" *Id*. at 160, 731 S.E.2d at 813. Because the Supreme Court held in *Lanvale* that the ordinance at issue <u>was not</u> a zoning regulation, the Court

did not address a local government's authority to enact a *bona fide* zoning ordinance or the requirements of a valid zoning regulation. We conclude that plaintiffs are not entitled to relief on the basis of the holding in *Lanvale*.

For the reasons discussed above, we conclude that the zoning amendment did not violate plaintiffs' right to substantive due process, and was not barred by N.C. Gen. Stat. § 160A-301 or the holding in *Lanvale*, and that the trial court's summary judgment order should be affirmed.

AFFIRMED.

Judges McGEE and ERVIN concur.