BRYANT, Judge.
 

 *536
 
 Where a proper statutory interpretation of the North Carolina Uniform Foreign-Country Money Judgments Recognition Act and evidence in the record support the trial court's order that a Scottish judgment at issue (1) was not a judgment for alimony, support, or maintenance in matrimonial or family matters, and (2) was not fundamentally unfair or repugnant to the public policy of North Carolina, we affirm the judgment of the trial court.
 

 Plaintiff Alan Savage and Defendant Julie Anne Zelent met in June 2006 and subsequently developed a romantic relationship. In the same year, defendant moved from England to Inverness, Scotland, where plaintiff and defendant cohabited from 1 September 2006 to 24 August 2007. The pair temporarily separated, but resumed cohabitation in February 2008. Plaintiff and defendant permanently separated in October 2008, after which defendant eventually moved to Carteret County, North Carolina.
 

 In 2011, defendant filed suit against plaintiff in Inverness Sheriff Court in Scotland under the Family Law (Scotland) Act of 2006, Section 28(2)(a), alleging that she sustained economic disadvantage as a result of her relationship with plaintiff and that she was entitled to financial contribution. After a seven day proof (trial), which took place over the course of November 2011, December 2011, and January 2012, the Sheriff (judge) found that defendant was not entitled to financial contribution from plaintiff. Defendant was entitled to appeal the judgment but failed to do so.
 

 After the proof concluded, defendant's counsel withdrew from representing her. Under Scottish Sheriff Court procedure, when a party
 
 *537
 
 becomes
 
 pro se,
 
 the Sheriff calls for a Peremptory Diet (hearing). If the
 
 pro se
 
 party fails to attend, the hearing may be held without the
 
 pro se
 
 party. On 17 August 2012, the Sheriff held the Peremptory Diet to determine whether legal costs should be awarded. Defendant, who had received notice of the Peremptory Diet, wrote an email in response but did not attend. The Sheriff awarded expenses to plaintiff in an amount to be determined by the Auditor of Court.
 

 Under Scottish law, the Auditor of Court is tasked with scheduling a Diet of Taxation (hearing), during which the Auditor assesses the validity of the entry in the Account of Expenses before determining the final sum to be awarded. Again, defendant did not attend the Diet of Taxation, send a representative, seek any corrections, or make any submissions to the Auditor.
 

 On 19 June 2013, the Auditor awarded expenses to plaintiff and submitted the report to the Sheriff. The Sheriff then approved
 
 *804
 
 the Auditor's Report and entered an award of attorneys' fees and expenses in the amount of £ 148,516.75 ("the Scottish judgment") against defendant. Defendant, having previously failed to exercise her right to appeal on the merits, again failed to exercise her right to appeal the amount of expenses awarded. Defendant made no payments on the Scottish judgment.
 

 On 16 January 2014, plaintiff served defendant with a Complaint to Recognize a Foreign-Country Money Judgment filed in Carteret County Superior Court. Defendant answered, asserting a defense pursuant to North Carolina Rule of Civil Procedure 12(b)(6) for failure to state a claim. On 27 June 2014, plaintiff filed a Motion to Recognize a Foreign-Country Money Judgment, along with a brief in support of the motion. On 7 July 2014, the matter came on for hearing in Carteret County Superior Court, the Honorable John E. Nobles presiding. By written order entered on 25 August 2014, Judge Nobles granted plaintiff's Motion to Recognize a Foreign-Country Money Judgment.
 

 Defendant's subsequent Motion for a New Trial was denied by Judge Nobles by written order entered on 14 October 2014. Defendant appeals.
 

 _________________________
 

 On appeal, defendant raises the following issues: whether the trial court erred (I) in recognizing the Scottish judgment under the North Carolina Uniform Foreign-Country Money Judgments Recognition Act; and (II) whether the Scottish judgment is fundamentally unfair or repugnant to North Carolina public policy.
 

 *538
 

 I
 

 Defendant argues that the trial court erred in concluding as a matter of law that the Scottish judgment was not a judgment for alimony, support, or maintenance in matrimonial or family matters. Defendant also argues that the attorneys' fees awarded to plaintiff in defendant's action for support under the Family Law (Scotland) Act constituted a judgment for "support ... in matrimonial or family matters" within the meaning of N.C. Gen.Stat. § 1C-1852 (2009). We disagree, noting that defendant's argument is one which requires our interpretation of the statute at issue in this case.
 

 "Questions of statutory interpretation are questions of law, which are reviewed
 
 de novo
 
 by an appellate court."
 
 Jenner v. Ecoplus,
 

 224 N.C.App. 275
 
 , 277,
 
 737 S.E.2d 121
 
 , 123 (2012) (quoting
 
 In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.,
 

 161 N.C.App. 558
 
 , 559,
 
 589 S.E.2d 179
 
 , 180 (2003) ). "The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent."
 
 Applewood Props., LLC v. New S. Props., LLC,
 

 366 N.C. 518
 
 , 522,
 
 742 S.E.2d 776
 
 , 779 (2013) (quoting
 
 Dickson v. Rucho,
 

 366 N.C. 332
 
 , 339,
 
 737 S.E.2d 362
 
 , 368 (2013) ). The Court's statutory analysis thus begins with the statutory words themselves.
 
 Jenner,
 

 224 N.C.App. at 278
 
 , 737 S.E.2d at 123. "[I]f [the words] are clear and unambiguous, they are to be given their plain and ordinary meanings."
 
 Id.
 
 (citation omitted). However, "[w]here a statute is ambiguous, judicial construction must be used to ascertain the legislative will."
 
 Id.
 
 Furthermore, "[u]nder the doctrine of
 
 expressio unius est esclusio alterius,
 
 when a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list."
 
 Patmore v. Town of Chapel Hill N.C.,
 
 --- N.C.App. ----, ----,
 
 757 S.E.2d 302
 
 , 307 (2014) (quoting
 
 Evans v. Diaz,
 

 333 N.C. 774
 
 , 779-80,
 
 430 S.E.2d 244
 
 , 247 (1993) ).
 

 The North Carolina Uniform Foreign-Country Money Judgments Recognition Act ("Recognition Act") applies to foreign country judgments that grant or deny recovery of a sum of money and are final, enforceable judgments under the law of the foreign country. N.C.G.S. § 1C-1852. The Act also states, in pertinent part, that: "(b) This Article does not apply to a foreign-country judgment, even if the judgment grants or denies recovery of a sum of money, to the extent that the judgment is ... (3) A judgment for alimony, support, or maintenance in matrimonial or family matters." N.C.G.S § 1C-1852(b)(3). The North Carolina Act is based on the Uniform Foreign-Country Money
 
 *805
 
 Judgments Recognition Act ("Uniform Act") as approved in 2005 by the National Conference of Commissioners on Uniform State Laws. N.C. Gen.Stat. § 1C-1850, North
 
 *539
 
 Carolina Comment (2009).
 
 [1]
 
 This Court has previously noted that "[t]he Recognition Act is a statute of inclusion with a strong presumption that foreign-country judgments will be recognized."
 
 Jenner,
 

 224 N.C.App. at 279
 
 , 737 S.E.2d at 124. Further, "[a] party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition ... exists."
 
 Id.
 
 (quoting N.C.G.S. § 1C-1853(g) ).
 

 As noted, the North Carolina Act is based on the Uniform Act. However, "[t]he General Statutes Commission inserted 'North Carolina' in the title and short title of the Article because of variations made to the text of the Uniform Act."
 
 Id.
 
 Notably, one such variation is explained in the North Carolina Comment to N.C. Gen.Stat. § 1C-1852(b)(3), which emphasizes the deliberate elimination and substitution of particular language from the Uniform Act:
 

 In subdivision (b)(3), the General Statutes Commission substituted "alimony, support, or maintenance in matrimonial or family matters" for the Uniform Act language "divorce, support, or maintenance, or other judgment rendered in connection with domestic relations." This change was due to concern that the Uniform Act's language could prevent recognition of an award based on a claim that was brought as part of a divorce action, for example, a tort action against one spouse for damage to the individual property of the other spouse.
 

 N.C.G.S. § 1C-1852(b)(3) Official Comment.
 

 Defendant asserts that the intent of the Recognition Act is that "North Carolina courts maintain a 'hands off' attitude to 'judgments for support in matrimonial or family matters' and consequent judgments for costs, attorneys' fees, etc." Defendant asserts that the attorneys' fees awarded against defendant in her action for support in a family law matter was in fact a judgment for support or alimony within the meaning of N.C. Gen.Stat. § 1C-1852. We disagree with defendant's assertions. To
 
 *540
 
 refuse recognition of the Scottish judgment as defendant would have us do, would require that we read the statute to substitute the word "for" and replace it with the phrase " arising out of," in effect revising the statute to read "judgment [arising out of] a claim for alimony, support, or maintenance." This we decline to do.
 

 Here, the statute clearly precludes recognition of judgments "for" alimony, "for" support, or "for" maintenance.
 
 See
 
 N.C.G.S. § 1C-1852(b)(3). The Scottish judgment, rather, is a judgment "for" attorneys' fees and expenses incurred by plaintiff and awarded against defendant. The purpose of the judgment was to reimburse plaintiff for expenses in defense of a claim brought by plaintiff and denied by the Scottish court. The plain language of the Scottish judgment reads as follows:
 

 The Sheriff, having considered the report by the Auditor of Court taxing the Defender's Account of Expenses in the sum of ONE HUNDRED AND FORTY EIGHT THOUSAND FIVE HUNDRED AND SIXTEEN POUNDS SEVENTY FIVE PENCE (£148516.75) which included £8370.00 of an Audit fee, Approved of the same and
 
 decerned for payment to the Defender's solicitor
 
 of the said sum.
 

 (emphasis added).
 

 This is a
 
 judgment
 
 for attorneys' fees and costs, determined by an Auditor, reviewed and approved by the Sheriff in conformity with the Scottish legal system, and awarded because defendant failed in her efforts to recover anything on her claims against plaintiff. "Because the word 'judgment' is unambiguous," the Court "must refrain from judicial construction and accord
 
 *806
 
 [the term its] plain and definite meaning."
 
 Akins v. Mission St. Joseph's Health Sys.,
 

 193 N.C.App. 214
 
 , 218,
 
 667 S.E.2d 255
 
 , 258 (2008). "Judgment means the final decision of the court resolving the dispute and determining the rights and obligations of the parties, and the law's last word in a judicial controversy."
 

 Id.
 

 (quoting
 
 Poole v. Miller,
 

 342 N.C. 349
 
 , 352,
 
 464 S.E.2d 409
 
 , 411 (1995) ) (internal quotation marks omitted). The word "judgment" implies no reference to the initial claims of an action. Indeed, the Recognition Act only applies to final judgments, and therefore, the initial claims of an action are not relevant when applying the Recognition Act. Thus, even though the Scottish judgment for attorneys' fees resulted from a failed claim for maintenance, because the judgment itself is one "for" attorneys' fees and not one "for" maintenance, application of the Recognition Act is not precluded.
 
 See
 
 N.C.G.S. § 1C-1852(b)(3).
 
 *541
 
 The issue is a pretty fine one in that "for" could be read, under other circumstances, as defendant asserts, to mean "arising out of"; however, here the North Carolina General Assembly's change to the statutory language as noted in the Official Comment, undercuts defendant's argument and supports the trial court's holding that the Scottish judgment is subject to the Recognition Act. The removal of the language "or other judgment in connection with domestic relations" from the Uniform Act supports our interpretation that attorneys' fees, even those resulting from a failed domestic action, can be properly recognized under the Recognition Act. The doctrine of
 
 expressio unius est esclusio alterius
 
 implies the exclusion of situations not contained in the list.
 
 See
 

 Patmore,
 
 --- N.C.App. at ----,
 
 757 S.E.2d at 307
 
 . Under that doctrine, the Official Comment to N.C. Gen.Stat. § 1C-1852 makes plain that the exclusion of the language "rendered in connection with domestic relations" from the statute was more than implied and rather was quite explicit. This deliberate change evidences the legislature's intent that judgments like the Scottish judgment are to be properly recognized pursuant to the Recognition Act.
 

 Finally, for the sake of uniformity of interpretation, the legislature endorses examination of cases from other jurisdictions in interpreting the North Carolina Recognition Act. "In applying and construing this Article, consideration may be given to promoting uniformity with respect to its subject matter among states that enact it." N.C. Gen.Stat. § 1C-1859 (2009). Two courts have addressed this narrow issue.
 

 The Ohio Court of Appeals in a similar case held that an English judgment awarding costs to the prevailing spouse in a divorce proceeding "was a judgment for costs, consisting of attorneys' fees. It was, therefore, not an award of support."
 
 [2]
 

 Hazzledine v. Hazzledine,
 
 No. 95-CA-35,
 
 1996 WL 156883
 
 , *2, 1996 Ohio App. LEXIS 1405, *1-2, 5 (Ohio Ct.App. Apr. 5, 1996). The court stated:
 

 In our view, the record clearly reflects that the judgment of the English court is an award of costs under the English rule that the prevailing party is normally awarded attorneys fees. Accordingly, while the underlying cause of action in which the judgment was awarded may have
 
 *542
 
 involved matrimonial or family matters, the judgment is not for support....
 

 Id.
 
 at *1, 1996 Ohio App. LEXIS 1405 at *1-2. The Ohio court noted, while an award of attorneys' fees in a domestic relations case might constitute support, it nonetheless held that, in the absence of any evidence that the judgment was intended to support the prevailing party, it was not a judgment for support based on the nature of the English rule (to award costs to the prevailing party).
 
 Id.
 
 at *2-3, 1996 Ohio App. LEXIS 1405 at *5-6.
 

 Like the English judgment in
 
 Hazzledine,
 
 the Scottish judgment here is an award of attorneys' fees in favor of the prevailing party, plaintiff, and against the party seeking the support, defendant. Similarly, no evidence
 
 *807
 
 shows that the Scottish judgment could constitute an award of support for plaintiff since he did not initiate the action seeking support from defendant. Under the reasoning in
 
 Hazzledine,
 
 and consistent with our own interpretation of the North Carolina Recognition Act, the Scottish judgment is not a judgment for support but rather a judgment based on an award of attorneys' fees.
 

 A New York appellate court faced a similar issue in
 
 Burelle v. Gilbert,
 
 No. 20041639SC,
 
 2005 WL 2276677
 
 (N.Y.App.Term Sept. 16, 2005). There, the judgment was a Canadian order for equitable distribution arising out of a divorce proceeding.
 
 Id.
 
 at *1. The defendant, like defendant here, argued that the judgment was barred based on New York's Recognition of Foreign Country Money Judgments Act because it was a "judgment for support in matrimonial or family matters."
 
 [3]
 

 Id.
 
 The New York court disagreed, holding that the judgment was not an award of support, "even though entered in a matrimonial proceeding."
 
 Id.
 
 Similarly, the judgment at issue here is not an award of support but is rather a reimbursement of attorneys' fees and expenses.
 

 We recognize that these cases are not controlling authority. However, with no North Carolina case law on point and the legislature's recommendation that other states' interpretations of their Foreign Country Money Judgments Recognition Acts may be considered, the Ohio and New York cases, while unpublished decisions, are persuasive authority that supports our holding that the Scottish judgment awarding attorneys' fees is not a judgment "for alimony, support, or maintenance."
 

 *543
 
 Based on the plain language of the statute, the General Assembly's express change in the Recognition Act in order to recognize judgments like the Scottish judgment, and persuasive authority from other states, we hold the trial court did not err in concluding that the Scottish judgment was not a judgment for support in family matters. The trial court properly recognized the judgment as one for attorneys' fees. Accordingly, defendant's argument is overruled.
 

 II
 

 Defendant argues that the Scottish proceeding under which plaintiff obtained the judgment for attorneys' fees was fundamentally unfair and the rationale employed was repugnant to the public policy of North Carolina, therefore violating North Carolina law. Defendant argues that the Scottish judgment was rendered in circumstances which question the integrity of the rendering court and that the "essential elements of impartial administration and basic procedural fairness" were not met in the foreign proceeding pursuant to N.C. Gen.Stat. § 1C-1853 (2009),
 
 amended by
 

 2015 N.C. Sess. Laws 2015
 
 -264, eff. June 24, 2015.
 
 [4]
 
 We disagree.
 

 Defendant invoked the jurisdiction of the Scottish court and availed herself of the procedures and processes applicable to her case. Thereafter, once her case was lost on the merits, she did not avail herself of the process or procedures for appealing her case. Further, she declined to participate in the proceedings for expenses-the Peremptory Diet and the Diet of Taxation-that were a continuing part of her case, and she did not avail herself of any appellate process. From the record we have of the proceedings defendant initiated in the Scottish Court, there is nothing to indicate that her failure to avail herself of additional processes, including appeals, was due to a perception by defendant of flaws or lack of fairness in the proceedings. Therefore, defendant should be precluded from arguing the integrity and fairness of the very system she chose to litigate
 
 *808
 
 her claims. Notably, the official commentary to N.C. Gen. Stat § 1C-1853(4)(c), addresses just such a situation:
 

 [I]f the problem is evidence of a lack of integrity or fundamental fairness with regard to the particular proceeding leading to the foreign-country judgment, then there
 
 *544
 
 may or may not be other factors in the particular case that would cause the forum court to decide to recognize the foreign-country judgment. For example, a forum court might decide not to exercise its discretion to deny recognition despite evidence of corruption or procedural unfairness in a particular case
 
 because the party resisting recognition failed to raise the issue on appeal from the foreign-country judgment in the foreign country,
 
 and the evidence establishes that, if the party had done so, appeal would have been an adequate mechanism for correcting the transgressions of the lower court.
 

 N.C.G.S. § 1C-1853, cmt. 12 (emphasis added). Nevertheless, we will address plaintiff's argument.
 

 As stated previously, "[q]uestions of statutory interpretation are questions of law, which are reviewed
 
 de novo
 
 by an appellate court."
 
 Jenner,
 

 224 N.C.App. at 277
 
 , 737 S.E.2d at 123. Additionally, defendant bears the burden of presenting evidence to demonstrate that this Court should not allow recognition of the Scottish judgment. N.C.G.S. § 1C-1853(g).
 

 The portion of the Recognition Act at issue here states, in pertinent part, that:
 

 (c) If a court of this State finds that any of the following exist with respect to a foreign-country judgment for which recognition is sought, recognition of the judgment shall be denied unless the court determines, as a matter of law, that recognition would nevertheless be reasonable under the circumstances:
 

 ...
 

 (7) The judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment.
 

 N.C.G.S. § 1C-1853(c)(7). Official Comment 11 to subsection (c)(7) further states that denial of recognition of the foreign judgment under this subsection "requires a showing of corruption
 
 in the particular case
 
 that had an impact on the judgment that was rendered." N.C.G.S. § 1C-1853 cmt. 11 (emphasis added). Defendant asserts that Mr. William M. Cochrane, Interim Auditor of Court Grampian Highland & Islands, who rendered the Scottish money judgment, had "a substantial doubt about the integrity of the opinion," and, therefore, the proceeding was
 
 *545
 
 fundamentally unfair. Defendant relies on the following excerpt from the Scottish judgment, which defendant asserts is an unfair "rubber stamping" of the attorneys' fees awarded and indicates the Auditor's "substantial doubt":
 

 Although I still had difficulty in deviating from the practice of Auditors of Court in Grampian Highland & Islands disallowing such expenses such as these in fairness to the other party, I accepted that in the direction that the award was on Solicitor/Client, client paying basis, greatly reduced the ability of the Auditor of Court to carry out his normal function in taxing an account prepared on that basis and subject to the test 'that such expenses have been expressly or impliedly approved by the client' before, allowing to all intents and purposes, the rubber stamping the account save for some necessary corrections....
 

 Yet, the Auditor also stated "that the Account [of expenses] although lengthy was fairly straight forward and all entries appeared to [be] fairly stated and at no time [was there] any indication of being excessive."
 

 We note defendant's argument that the comments defendant urges us to concentrate on suggest the Auditor had doubt about the fairness of the expenses in this case. However, we must reject this argument; for even if the Auditor had doubt about the
 
 fairness
 
 of expenses, such doubt does not rise to the level of "corruption in the particular case" required to deny recognition.
 
 See
 
 N.C.G.S. § 1C-1853 cmt. 11. Clearly, the Auditor also took into consideration the background and complexity of the case:
 

 [I]t was an action in which the pursuer [defendant] sought payment of a capital of
 
 *809
 
 some £500,000.00 from the defender [plaintiff] in terms of section 28(2)(a) of the Family Law (Scotland) Act 2006 and this case in question was at that time one of the first in Scotland and in 'value' exceeded that of the case of
 
 Gow v. Grant
 
 ... which is the leading case on this section.
 

 Finally, the Auditor stated that he "spent some considerable time reviewing the Account prior to the Diet of Taxation" and ultimately concluded that the award was not excessive.
 

 Additionally, at the Diet of Taxation, where the court's award of expenses was independently examined by the Auditor, defendant had notice of the Diet, an opportunity to be heard, and have counsel
 
 *546
 
 represent her. She chose not to appear, nor did counsel appear on her behalf. Defendant also had the opportunity to appeal the adverse decision on her underlying claims as well as the award of costs, and chose not to pursue an appeal of either decision. Thus, defendant's argument regarding the fundamental unfairness of the proceeding is unpersuasive.
 

 Defendant next argues that the "Solicitor/Client, client paying" method of allowing fees and expenses and the amount of the award runs counter to the North Carolina concept of what is fair and just in awarding attorney's fees and that such a scheme is against public policy. We disagree.
 

 The commentary to North Carolina General Statutes section 1C-1853(c)(3) of the Recognition Act reveals a stringent test for finding a public policy violation:
 

 Public policy is violated only if recognition of the foreign-country judgment would tend clearly to injure the public health, the public morals, or the public confidence in the administration of the law, or would undermine "that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel."
 

 N.C.G.S. § 1C-1853 cmt. 8 (quoting
 
 Hunt v. BP Exploration Co. (Libya) Ltd.,
 

 492 F.Supp. 885
 
 , 901 (N.D.Tex.1980) ). "[A] difference in law, even a marked one, is not sufficient to raise a public policy issue."
 

 Id.
 

 "Nor is it relevant that the foreign law allows a recovery that the forum state would not allow."
 

 Id.
 

 Here, the Auditor concluded in his report "that the Account [of expenses] although lengthy was fairly straight forward and all entries appeared to [be] fairly stated and at no time [was there] any indication of being excessive." Even though defendant asserts that "reasonableness" is the key factor under all North Carolina attorneys' fee statutes, the fact that Scottish law differs from North Carolina law is "not sufficient to raise a public policy issue."
 
 Id.; see
 

 GE Betz, Inc. v. Conrad,
 
 --- N.C.App. ----, ----,
 
 752 S.E.2d 634
 
 , 655-56 (2013) (discussing "reasonableness" of attorneys' fees and factors to be considered under North Carolina law).
 

 Finally, defendant cites plaintiff's wealth and argues that enforcement of the Scottish judgment will pose a risk of allowing wealthy litigants to "run up" fees in a "loser pays" system, knowing that if the wealthy person prevails, he can financially ruin his opponent through a post-trial "award of expenses." Defendant argues that this poses the
 
 *547
 
 additional risk of deterring non-wealthy persons from taking their cases to court. This argument nevertheless fails to demonstrate how awarding attorneys' fees in this case is repugnant to North Carolina public policy.
 

 North Carolina statutory law explicitly authorizes the award of attorneys' fees in domestic relations matters.
 
 See
 
 N.C. Gen.Stat. § 50-16.4 (2010) (authorizing the award of attorneys' fees in an action for alimony or post-separation support); N.C. Gen.Stat. § 50-13.6 (1973) (authorizing the award of attorneys' fees in an action or proceeding for the custody or support of a minor child). Further, defendant's argument could be equally applicable to a wealthy litigant in North Carolina, where attorneys' fees and costs are regularly taxed to the losing party.
 
 See
 
 N.C. Gen.Stat. § 6-21.1 (2013) (allowing counsel fees as part of costs in certain cases);
 
 Bryson v. Cort,
 

 193 N.C.App. 532
 
 ,
 
 668 S.E.2d 84
 
 (2008) (affirming an award of attorneys' fees to prevailing party in a personal injury action);
 
 Robinson v. Shue,
 

 145 N.C.App. 60
 
 ,
 
 550 S.E.2d 830
 
 (2001) (affirming an award of
 
 *810
 
 attorneys' fees to prevailing party in an automobile negligence action).
 

 Despite the arguably large amount of the attorneys' fees awarded in this case, (£148,516.75), the Auditor indicated in the Scottish judgment that this award was not "excessive," particularly considering that this was the largest claim for support ever made in Scotland under section 28(2)(a) of the Family Law (Scotland) Act of 2006. Both the statutory interpretation of the Recognition Act and the evidence in the record support the trial court's determination that the Scottish judgment is not repugnant to North Carolina public policy. Accordingly, defendant's argument is overruled.
 

 We hold that the trial court did not err in concluding that the Scottish judgment is (I) not a judgment for alimony, support, or maintenance in matrimonial or family matters, and (II) not repugnant to the public policy of North Carolina.
 

 AFFIRMED.
 

 Judges GEER and TYSON concur.
 

 [1]
 

 While the policy reasons for excluding judgments for alimony, support, or maintenance in matrimonial matters are not explicitly laid out in either the Recognition Act itself or the official commentary, the following may shed some light on the matter. For instance, the United States, as a nation, is generally reluctant to enter into any international family support agreements, as explained by John L. Saxon in his article "International Establishment and Enforcement of Family Support."
 
 See
 
 John L. Saxon,
 
 International Establishment and Enforcement of Family Support,
 
 1999 Fam. L. Bull. 1, 11-12 n. 24 (1999).
 

 [2]
 

 Ohio's Uniform Foreign-Money Judgments Recognition Act, defining "foreign country judgment" reads as follows: "(B) 'Foreign country judgment' means any judgment of a foreign country that grants or denies the recovery of a sum of money,
 
 other than the following types of judgments: ... (3) A judgment for support involving matrimonial or family matters.
 
 " Ohio Rev.Code Ann. § 2329.90(B)(3) (LexisNexis 1985) (emphasis added).
 

 [3]
 

 New York's applicable statute, the Recognition of Foreign Country Money Judgments, reads, in pertinent part, as follows: "(b) Foreign country judgment. 'Foreign country judgment' in this article means any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters." N.Y. C.P.L.R. 5301(b) (McKinney 1979).
 

 [4]
 

 N.C. Gen.Stat. § 1C-1853 can be considered the denial of recognition part of the Act. We also note that the amendment to N.C. Gen.Stat. § 1C-1853, effective June 24, 2015, while not relevant to the case here, made no substantive changes to the act or to the subsections at issue here.
 
 See
 

 2015 N.C. Sess. Laws 2015
 
 -264, eff. June 24, 2015 (making changes to subsection (j)).