Ehmann v. Medflow, Inc., 2019 NCBC 9.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

EUGENE K. EHMANN;
N. WILLIAM SCHIFFLI, JR.; and
THAD A. THRONEBURG,

      Plaintiffs,

  v.

MEDFLOW, INC.; GREG E.
LINDBERG; ELI RESEARCH, LLC;
ELI GLOBAL, LLC; ELI EQUITY, LLC;
SNA CAPITAL, LLC; SOUTHLAND
NATIONAL HOLDINGS, LLC;
SOUTHLAND NATIONAL
INSURANCE CORPORATION;
DJRTC, LLC; and MEDFLOW
HOLDINGS, LLC,

      Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 3098

**ORDER & OPINION
ON PLAINTIFFS' MOTION FOR
RECONSIDERATION**

1.     THIS MATTER is before the Court on Plaintiffs Eugene K. Ehmann, N. William Schiffli, Jr., and Thad A. Throneburg's Motion for Reconsideration (the "Motion") of this Court's September 26, 2017, Order & Opinion Denying Cross-Motions for Summary Judgment ("Summary Judgment Opinion"). For the reasons stated below, the Motion is DENIED.

> *Caudle & Spears, P.A., by Harold C. Spears and Christopher P. Raab, for Plaintiffs.*
>
> *Condon Tobin Sladek Thornton PLLC, by Aaron Z. Tobin (pro hac vice), Kendal B. Reed (pro hac vice), John DeFeo (pro hac vice), and Jared T.S. Pace (pro hace vice), and Fox Rothschild LLP, by Matthew Krueger-Andes, Matthew Nis Leerberg, and Troy D. Shelton, for Defendants.*

Gale, Judge.

## I. INTRODUCTION

2. Plaintiffs Thad A. Throneburg ("Throneburg"), Eugene K. Ehmann ("Ehmann"), and N. William Schiffli ("Schiffli") (collectively, the "Plaintiffs") filed this action seeking to enforce benefits provided under their employment agreements with Defendant Medflow, Inc. ("Medflow"). Medflow challenges the validity of the employment agreements, contending they are improper conflict-of-interest transactions which were unfair to Medflow at the time they were entered. The Court severed for early determination the issue of whether Plaintiffs' employment agreements are binding and enforceable (the "Severed Issue"). The parties filed cross-motions for summary judgment on the Severed Issue.

3. Plaintiffs contended that the employment agreements were entitled to a presumption of validity under the business judgment rule and that Plaintiffs were therefore entitled to summary judgment because Defendants offered no evidence upon which Plaintiffs could be found to have breached their fiduciary duties to Medflow. Defendants contended that the employment agreements were conflict-of-interest transactions, and that Plaintiffs, as Medflow officers or directors, could not as a matter of law prove that the employment agreements were fair to Medflow when entered.

4. In its Summary Judgment Opinion denying the cross-motions for summary judgment, the Court found remaining issues of disputed material facts. As to Schiffli, it is unresolved whether he was a de facto officer of Medflow at the time he entered into his agreement and is subject to the rules governing contracts between

a corporation and its officers. Otherwise, the Court held that Plaintiffs' employment agreements were conflict-of-interest transactions which were not sheltered by the business judgment rule, so that Plaintiffs must bear the initial burden of proving that their agreements were fair to Medflow when they were entered into. The Court rejected Defendants' position that the agreements were unfair as a matter of law.

5. Plaintiffs bring the present Motion because N.C. Gen. Stat. § 55-8-11 ("Section 55-8-11") has been amended since the Court's Summary Judgment Opinion (the "2018 Amendment"). Neither the parties' summary judgment motions nor the Summary Judgment Opinion relied on Section 55-8-11. Yet, Plaintiffs contend that the 2018 Amendment mandates the conclusion that the Court's Summary Judgment Opinion was in error because, regarding Ehmann's conduct, it overlooked Section 55-8-11 and instead relied on N.C. Gen. Stat. § 55-8-31 ("Section 55-8-31") to refuse him, and subsequently all Plaintiffs, the benefit of the business judgment rule.[1] They contend that the 2018 Amendment clarifies that the law is, and has at all times been, that a director's compensation is governed by Section 55-8-11, not Section 55-8-31, and is presumptively valid whether or not the compensation is for services rendered by a director in his or her capacity as a director. Plaintiffs then contend summary judgment should be granted in their favor because Defendants offered no evidence to overcome the presumption of validity.

---

[1] On summary judgment, the Court applied the common law to deny the benefit of the business judgment rule to non-director Plaintiffs, Throneburg and Schiffli, because they engaged in conflict-of-interest transactions. Though the Court does not reach this argument, Plaintiffs now contend that because Ehmann was entitled to the protection of Section 55-8-11, Throneburg and Schiffli no longer engaged in conflict-of-interest-transactions.

6.      For reasons discussed below, the Court rejects Plaintiffs' construction of the 2018 Amendment, finding that Section 55-8-11 does not govern compensation of a director for services not rendered in his or her capacity as a director, and concludes that its Summary Judgment Opinion was not in error.  Accordingly, the Court will deny the Motion.

## II.    FACTUAL BACKGROUND

7.      The Court now summarizes the facts necessary to provide context for its consideration of the Motion.[2]

### A.    **The Employment Agreements**

8.      At the time of the relevant transactions, Throneburg was Medflow's interim Chief Executive Officer, Ehmann was Medflow's sole director as well as a Vice-President, and Schiffli, while no longer a Medflow officer, continued to discharge the duties he had previously fulfilled as Medflow's Chief Financial officer. Throneburg, Ehmann, and Schiffli were three of the four members of Medflow's senior executive team (the "Senior Executive Team").  Following the ouster of Medflow's President and shortly after Throneburg became interim CEO, the Senior Executive Team adopted a three-year strategic plan to implement a new business model for Medflow (the "Strategic Plan").  Plaintiffs contend that due to the multi-year span of the Strategic Plan, its success was dependent on the continued employment of the persons necessary to its execution.  Therefore, as part of the Strategic Plan, Throneburg, Ehmann, and Schiffli entered employment agreements with Medflow.

---

[2] For a full recitation of the facts, see the Summary Judgment Opinion.  (*See* Order & Op. Den. Cross-Mots. Summ. J. 5–21 ("Summ. J. Op."), ECF No. 257.)

9. Before their negotiations began, Throneburg significantly increased Ehmann's and Schiffli's compensation. Throneburg, Ehmann, and Schiffli's agreements were negotiated in that order, and written contracts for each were executed several weeks later. As sole director of Medflow, Ehmann first negotiated Throneburg's employment agreement with him. After agreeing on the core terms, Ehmann directed Throneburg, an attorney, to prepare his own written contract. Then Ehmann, upon Throneburg's advice that the corporate bylaws authorized Ehmann to do so, delegated to Throneburg the authority of the board of directors to negotiate such contracts as Throneburg thought necessary to achieve the Strategic Plan. Throneburg began by negotiating Ehmann's employment contract. That contract compensated Ehmann solely for his employment services and did not seek to set any compensation for services that Ehmann might undertake in his capacity as a director.

10. Throneburg then negotiated employment agreements with Schiffli and another member of the management team who is not a party to this litigation. The written agreements for Throneburg, Ehmann, and Schiffli contain identical terms except for the compensation amount. When preparing the final agreements, Plaintiffs agreed to add a term providing for additional payment in the event of a change of control of Medflow. The agreements were not reviewed by Medflow's outside counsel or submitted to Medflow's shareholders for approval before they were executed.

**B.       The Summary Judgment Opinion**

11.       On summary judgment Defendants argued, and this Court agreed, that Plaintiffs' employment agreements were conflict-of-interest transactions because Plaintiffs each possessed a direct interest in his own employment agreement, and neither Throneburg nor Ehmann could independently act for Medflow.  In light of Ehmann's conflict, the Court considered Section 55-8-31, which applies to directors transacting with a corporation but not to officers.  While Section 55-8-31 provides two safe harbors for interested transactions between a corporation and a director—(1) approval by a majority of the board of directors and (2) approval by a majority of the shareholders—it otherwise incorporates the common law rule that a director must prove that his interested transaction with the corporation is fair to the corporation. Regarding Throneburg's and Schiffli's conduct, the Court considered the same common law rule, which also applies to officers who engage in interested transactions. In its Summary Judgment Opinion, the Court held that the issue of fairness is to be determined at the time the contracts were entered into.

12.       On the motion for summary judgment, Plaintiffs contended that there were sound business reasons for entering the agreements without submitting them for shareholder approval and that these business reasons afforded them the benefit of the business judgment rule.  Plaintiffs argued that Defendants did not overcome the business judgment rule's presumption in Plaintiffs' favor because they did not present any evidence that Plaintiffs breached their fiduciary duties to Medflow.  As such, Plaintiffs sought a declaration on summary judgment that their employment

agreements were valid. This Court disagreed that the agreements' validity could be determined summarily and held that "[a] director, if not protected by the statutory safe harbors, or an officer when challenged, must prove that his [or her] interested transaction with the corporation is fair to the corporation." (Summ. J. Op. 40 (citing N.C. Gen. Stat. § 55-8-31(a); *Highland Cotton Mills v. Ragan Knitting Co.*, 194 N.C. 80, 87, 138 S.E. 428, 431 (1927)).)

13. The Court left open the issue of whether Ehmann did or could have delegated director authority to Throneburg, but held as a matter of law that neither Throneburg nor Ehmann could be considered an independent and disinterested director with whom the employment agreements could be negotiated. Accordingly, this Court concluded that Throneburg, Ehmann, and Schiffli (if Schiffli is determined to be a de facto officer) were required to prove at trial that the employment agreements were fair to Medflow when entered. The Court also rejected Defendants' contention that no trial was necessary because the contracts were unfair when entered into as a matter of law. The Court was not asked to apply Section 55-8-11 and did not consider the statute to be controlling in its summary judgment rulings.

### III. PROCEDURAL BACKGROUND

14. The Court issued the Summary Judgment Opinion on September 26, 2017. Plaintiffs filed an interlocutory appeal on October 26, 2017, (*see* Notice Appeal, ECF No. 261), followed by a Petition for Writ for Certiorari with the North Carolina Supreme Court, (*see* Notice Filing Appellate Ct., ECF No. 271). On August 14, 2018,

the North Carolina Supreme Court dismissed the appeal and denied the Petition for Writ of Certiorari.

15. Plaintiffs filed this Motion on November 8, 2018. (Pls.' Mot. Recons., ECF No. 275.)

16. The Motion has been fully briefed, and the Court heard oral arguments on January 9, 2019. The Motion is now ripe for determination.

## IV. STANDARD OF REVIEW

17. Plaintiffs request reconsideration of the Summary Judgment Opinion under Rule 54(b) of the North Carolina Rules of Civil Procedure, which provides that "[i]n the absence of entry of . . . a final judgment, any order . . . which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . . is subject to revision . . . ." N.C. Gen. Stat. § 1A-1, Rule 54(b).

18. Without the benefit of North Carolina appellate precedent, in considering a motion for reconsideration the Business Court has previously relied on case law addressing Federal Rule of Civil Procedure 54(b).[3] *See W4 Farms, Inc. v. Tyson Farms, Inc.*, No. 16 CVS 1112, 2017 NCBC LEXIS 99, at \*4–5 (N.C. Super. Ct. Oct. 19, 2017); *In re Se. Eye Ctr.-Judgments*, No. 12 CVS 11322, 2017 NCBC LEXIS 77, at \*9 (N.C. Super. Ct. Aug. 22, 2017).

---

[3] When the North Carolina appellate courts have not addressed a particular rule of civil procedure, "the Court may look to federal cases interpreting the analogous Federal Rule of Civil Procedure." *Speedway Motorsports Int'l v. Bronwen Energy Trading, Ltd.*, No. 08-CVS-9450, 2009 NCBC LEXIS 17, at \*9 (N.C. Super. Ct. Feb. 18, 2009) (citing *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989)).

19. The determination of a Rule 54(b) motion for reconsideration is within the trial court's discretion. *See Ward v. FSC I, LLC*, No. 16 CVS 274, 2017 NCBC LEXIS 19, at \*6 (N.C. Super. Ct. Mar. 7, 2017) (citing *Akeva LLC. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565–66 (M.D.N.C. 2005)). Generally, trial courts restrict reconsideration to grounds based on "(1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent a manifest injustice." *RF Micro Devices, Inc. v. Xiang*, No. 1:12CV967, 2016 U.S. Dist. LEXIS 74550, at \*3–4 (M.D.N.C. June 8, 2016). "A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *W4 Farms,* 2017 NCBC LEXIS 99, at \*5 (quoting *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015)). "To allow motions to reconsider offhandedly or routinely would result in an unending motions practice." *Window World of Baton Rouge, LLC v. Window World, Inc.*, No. 15 CVS 1, 15 CVS 2, 2019 NCBC LEXIS 7, at \*8 (N.C. Super. Ct. Jan. 25, 2019) (citing *W4 Farms*, 2017 NCBC LEXIS 99, at \*5) (quoting *Wiseman v. First Citizens Bank & Tr. Co.*, 215 F.R.D. 507, 509 (W.D.N.C. 2003)).

20. Here, Plaintiffs contend that the intervening amendment to Section 55-8-11 demonstrates that Plaintiffs have suffered a manifest injustice because the Court erred in its Summary Judgment Opinion in determining the standard upon which their agreements should be reviewed.

## V.    ANALYSIS

21.    In order for Plaintiffs to prevail on the Motion, the Court must find that the purpose of the 2018 Amendment was to clarify that Section 55-8-11 does, and always has, applied to a transaction at issue here such that the Summary Judgment Opinion was in error. *See Trustees of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 240, 328 S.E.2d 274, 280 (1985) ("When the legislature amends a statute, a presumption arises that its intent was either to (1) change the substance of the original act or (2) clarify the meaning of it.") (citing *Childers v. Parker's, Inc.*, 274 N.C. 256, 162 S.E.2d 481 (1968)); *see also Ray v. N.C. DOT*, 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012) (stating that a clarifying amendment applies to "cases pending before the courts when the amendment is adopted") (citations omitted).[4]

22.    Statutory interpretation is a matter of law for the Court to decide. *See Brown v. Flowe*, 349 N.C. 520, 523, 507 S.E.2d 894, 896 (1998). In construing a statute, a court "looks first to the plain meaning of the words of the statute itself." *State v. Fletcher*, 807 S.E.2d 528, 538 (N.C. 2017) (quoting *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010)). "If the statutory language is clear and

---

[4] Otherwise, there is a "well-established rule of construction in North Carolina that a statute is presumed to have prospective effect only and should not be construed to have a retroactive application unless such an intent is clearly expressed or arises by necessary implication from the terms of the legislation." *State v. Green*, 514 S.E.2d 724, 727 (N.C. 1999) (citation omitted). This litigation was already pending at the time of the 2018 Amendment. Defendants argue that if the Legislature had intended the 2018 Amendment to be clarifying and retroactive it would have said so. (*See* Defs.' Resp. Opp. Pls.' Mot. Recons. 5–6, ECF No. 285.) However, "[g]iven that all statutes have such effective dates, an effective date, standing alone, is insufficient information for [a court] to conclude, in carrying out the task of interpreting a statute, that the statute is a substantive change in law." *Ray*, 366 N.C. at 9–10, 727 S.E.2d at 682 (finding that an amendment was clarifying and retroactive even though it specified an effective date and that it applied to claims arising on or after that date).

unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *Id.* (quoting *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005)). A court only considers external evidence of legislative intent where a statute is ambiguous on its face. *See Brown*, 349 N.C. at 522, 507 S.E.2d at 895–96.

23. Additionally, "[w]here the legislature amends an ambiguous statute," a presumption arises that the purpose of the amendment was to "improve the diction, or to clarify that which was previously doubtful." *Trustees of Rowan Tech. Coll.*, 313 N.C. at 240, 328 S.E.2d at 280 (citing *Childers*, 274 N.C. at 260, 162 S.E.2d at 484). Therefore, in order to determine whether Section 55-8-11 applies to any of the transactions at hand, the Court must first determine whether Section 55-8-11 was "clear and unambiguous" before its amendment.

24. Ambiguity exists only where the statute is "fairly susceptible of two or more meanings[.]" *Swauger v. Univ. of N.C.*, 817 S.E.2d 434, 437 (N.C. App. 2018) (quoting *State v. Sherrod*, 191 N.C. App. 776, 778, 663 S.E.2d 470, 472 (2008)). Prior to its amendment, Section 55-8-11 ("Pre-Amendment 55-8-11") read simply: "[u]nless the articles of incorporation or bylaws provide otherwise, the board of directors may fix the compensation of directors." N.C. Gen. Stat. § 55-8-11 (1989).

25. Plaintiffs contend that Pre-Amendment 55-8-11 left open whether it applied only to transactions in which a board of directors fixed the compensation of directors for services rendered in the capacity of a director, or instead extended more broadly to any compensation a director received. Notably, Ehmann recognized this

potential ambiguity prior to the 2018 Amendment. (*See* Pl. Ehmann's Reply Br. Supp. Mot. Partial Sum. J. 8, ECF No. 207 ("Although this statute could be construed to permit directors to fix their own compensation as officers if they serve as officers as well as directors, it may be limited to their authority to fix their compensation solely in their role as directors.").)

26.    However, while it was not required to explicitly explain so in the Summary Judgment Opinion, this Court implied its understanding that Pre-Amendment 55-8-11 applied solely to transactions regarding a director's compensation for services rendered in the capacity as a director. Consistent with this reading, the Court applied Section 55-8-31 to Ehmann's employment agreement as the appropriate standard for transactions concerning a director's compensation outside of his service as a director.

27.    To the extent this Court and Plaintiffs have expressed conflicting understandings of its impact on the scope of Pre-Amendment 55-8-11, the phrase "compensation of directors" is susceptible to multiple interpretations.[5] Though the Court will ultimately conclude that the 2018 Amendment confirms that Section 55-8-11 has always been limited to compensating directors for services rendered while acting in the capacity of a director, the Court finds that Pre-Amendment 55-8-11 was ambiguous as to the scope of "compensation of directors." *See Misenheimer v. Burris,*

---

[5] Though the Court has focused its analysis on the merits of the Motion, the Court also notes the fact that Plaintiffs discovered a potential ambiguity in Pre-Amendment 55-8-11 in their favor in 2016 but chose not to present Section 55-8-11 to the Court as the appropriate legal standard on summary judgment not only calls into question the procedural propriety of this Motion, but also signals a lack of conviction by Plaintiffs in their own argument that Pre-Amendment 55-8-11 was ambiguous.

360 N.C. 620, 623, 637 S.E.2d 173, 175 (2006) (finding N.C. Gen. Stat. § 1-52(16) ambiguous on its face because "[t]he term personal injury has a wide range of meanings").

28.     Having so held, the Court must now determine Pre-Amendment 55-8-11's meaning by applying the principles of statutory construction "to ascertain the legislative will." *Fletcher*, 807 S.E.2d 528, 539 (citations omitted). "To determine legislative intent, a court must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objective the statute seeks to accomplish." *Jenner v. Ecoplus, Inc.*, 224 N.C. App. 275, 277–78, 737 S.E.2d 121, 123 (2012) (citing *Brown*, 349 N.C. at 522–23, 507 S.E.2d at 895–96); *see Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980).

29.     "When a statute is unclear and the legislature subsequently enacts a clarifying amendment, that amendment may be referred to for guidance in construing the earlier statute." *Ferrell v. Dep't of Transp.*, 334 N.C. 650, 659, 435 S.E.2d 309, 315 (1993) (citations omitted). As amended, Section 55-8-11 ("Amended 55-8-11") states:

> Unless the articles of incorporation or bylaws provide otherwise, the board of directors*, without regard to personal interest,* may fix the compensation of directors *for services in any capacity. The compensation established pursuant to this section of directors of a public corporation or of a corporation that so provides in its articles of incorporation is presumed to be fair to the corporation unless proven not to be fair to the corporation by a preponderance of the evidence.*

§ 55-8-11 (2018) (emphasis added). The bill amending Section 55-8-11 has an effective date of October 1, 2018.

30. Relying on the rule of construction that "[w]hen a statute that fails expressly to address a particular point is subsequently amended to address that point, the amendment is more likely to be clarifying than altering," *Ferrell*, 334 N.C. at 659, 435 S.E.2d at 315, Plaintiffs contend that by adding the language "for services in any capacity," the 2018 Amendment clarified that Section 55-8-11 must be read broadly to extend to all forms of a director's compensation, not just compensation for services as a director. (*See* Pls.' Reply Br. Supp. Mot. Recons. 8, ECF No. 291.)

31. Stated otherwise, Plaintiffs aver the 2018 Amendment clarified in their favor that the compensation of a director of any sort is governed only by Section 55-8-11, and such compensation falls wholly outside the scope of Section 55-8-31. Under this construction, Plaintiffs argue that Ehmann, who alone comprised Medflow's board of directors, could set his own compensation even if he had a personal interest in that transaction.

32. As further evidence of legislative intent, both parties request that the Court consider sources external to the statutory language. Plaintiffs request that the Court consider a summary of the 2018 Amendment prepared by the Business Corporations Committee of the Business Law Section of the North Carolina Bar Association (the "NCBA Summary"), relying on *State ex rel. N.C. Milk Comm'n v. Nat'l Food Stores, Inc.*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967) (stating that "intent must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied").

33.     Defendants first contend that the Court cannot properly consider the NCBA Summary, citing *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 202, 675 S.E.2d 641, 650 (2009) ("[I]n determining legislative intent, [the Supreme Court] does not look to the record of the internal deliberations of committees of the legislature considering proposed legislation.") (quoting *Elec. Supply. Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 657, 403 S.E.2d 291, 295 (1991)). Alternatively, Defendants assert that the NCBA Summary does not support Plaintiffs' position. Defendants further posit that it is more appropriate for the Court to consider the Official Comment to Section 55-8-11, which is consistent with the Court's Summary Judgment Opinion. The Court now considers both.

34.     As an initial matter, the Supreme Court of North Carolina "has noted that the commentary to a statutory provision can be helpful in discerning legislative intent." *Parsons v. Jefferson-Pilot Corp.*, 333 N.C. 420, 425, 426 S.E.2d 685, 689 (1993) (citing *State v. Bogle*, 324 N.C. 190, 202 n.5, 376 S.E.2d 745, 752 n.5 (1989) (stating that commentary that is not enacted into law is not binding, but that it may be given substantial weight in determining legislative intent)).

35.     The Official Comment to Pre-Amendment 55-8-11 ("1989 Official Comment") states: "[t]his section puts at rest the question whether the board of directors can fix the compensation of its members *for serving as directors*." § 55-8-11, Official Comment (1989) (emphasis added). The Court finds this to be a clear statement that Pre-Amendment 55-8-11 was targeted at services rendered by a director in the capacity of a director but not to other services.

36.     There is nothing in the North Carolina Commentary added at the time of the 2018 Amendment ("2018 Commentary") that suggests the addition of the language "for services in any capacity" was intended to extend Section 55-8-11 to compensation for services other than those rendered in the capacity as a director.  In fact, the 2018 Commentary does not mention that language at all but focuses on the newly added second sentence in Amended 55-8-11 and the impact of the presumption of fairness, should it apply.  *See Id.*, Official Comment (2018).[6]  Stated otherwise, the 2018 Commentary does not support a suggestion that the North Carolina Legislature intended to reverse the clear limitation of Section 55-8-11 to compensation for "serving as directors" reflected by the 1989 Official Comment.

37.     Next, while the NCBA Summary cannot properly be considered legislative history, it may still be appropriate to consider as the Supreme Court of North Carolina has assessed similar materials to help discern legislative intent in the past.  *See Trustees of Rowan Tech. Coll.*, 313 N.C. at 236, 328 S.E.2d at 277–78 (relying upon a North Carolina Professional Liability Insurance Study Commission report to show the purpose behind N.C. Gen. Stat. §1-15(c) and the factors prompting

---

[6] The 2018 Commentary states in full:

> This section differs from the Model Act by confirming that, in the case of a public corporation or of a private corporation that so provides in its articles of incorporation, if the board of directors fixes the compensation of directors, then regardless of their personal interest in that decision, the amount of compensation is presumed fair to the corporation and the challenger would be required to allege facts, that if proven true, would be sufficient to overcome the presumption in order to avoid dismissal at the summary judgment stage of any proceeding.  In effect, the section confirms that the decision of a board regarding its compensation is subject to review under the business judgment rule, but the amendment does not preclude meritorious challenges where a board of directors has awarded itself compensation that is proven not to be fair to the corporation.

its enactment); *Greene v. Town of Valdese*, 306 N.C. 79, 83–84, 291 S.E.2d 630, 633 (1982) (relying upon a Report of the Municipal Government Study Commission to determine legislative intent); *State ex rel. Hunt v. N.C. Reinsurance Facility*, 302 N.C. 274, 295, 275 S.E.2d 399, 409–10 (1981) (finding a statement of the North Carolina Legislative Research Commission Report on insurance laws "especially pertinent" to the question of legislative intent).

38.     If the NCBA Summary is properly considered, it does elucidate why the Business Corporations Committee suggested the 2018 Amendment to the Legislature, and provides guidance for discerning the motivation for adding the phrase "for services in any capacity" to Section 55-8-11.  The NCBA Summary makes clear that the 2018 Amendment carried forward Section 55-8-11's focus on compensation for services as a director while also clarifying that the compensation need not be constrained to its traditional forms such as annual director fees.

39.     In fact, the NCBA Summary focused on two Delaware cases that the Business Corporations Committee was concerned, when broadly read, could be construed to require a higher standard of review for non-traditional director compensation and erode the function of the business judgment rule in that context: *Calma v. Templeton*, 114 A.3d 563, 578 (Del. Ch. 2015) (finding that a compensation committee approving restricted stock unit awards to itself and other non-employee directors was a conflicted transaction "outside the business judgment rule's presumptive protection"), and *Seinfeld v. Slager*, No. 6462-VCG, 2012 Del. Ch. LEXIS 139, at *54–55 (June 29, 2012) (determining that a board's self-interested decision to

award bonuses to board members must be evaluated for entire fairness). (*See* Pls.' Mem. Supp. Mot. Recons. Ex. B, at 10–11 ("NCBA Summary"), ECF No. 276.3.) Unlike the present case, those Delaware cases had nothing to do with an individual director approving his own employment agreement for services rendered outside of his capacity as a director.

40. Furthermore, in expanding the language of Section 55-8-11, the Business Corporations Committee noted the practical limitation that "[d]isinterested director approval or shareholder approval of director compensation is often not feasible, particularly for public corporations, and subjecting directors to litigation in which they are required to prove the fairness of their compensation encourages frivolous claims." (NCBA Summary 10.) Those concerns are not present here, where the contracts at issue are interested transactions between fiduciaries and a small, closely-held corporation. In short, Plaintiffs press the language in the NCBA Summary well beyond its scope and intent.

41. The Court has fully considered all arguments and materials submitted.[7] Having done so, it finds that, on balance, the evidence of legislative intent strongly

---

[7] Plaintiffs also attached a copy of pertinent portions of the North Carolina Senate's minutes ("Senate Minutes") to their brief in support of the Motion. The Senate Minutes, however, are of limited value in determining legislative intent. They only state that the senate bill "makes revisions to the Business Corporation Act based upon changes made to the Model Corporation Act and to the corporation law of other jurisdictions, as recommended by the Business Corporations Committee of the Business Law Section of the North Carolina Bar Association," (Pls.' Mem. Supp. Mot. Recons. Ex. A, at 3 ("Senate Minutes"), ECF No. 276.2), and that the 2018 Amendment "would provide that the compensation of directors of a public corporation or of a corporation that so provides in its articles of incorporation is presumed to be fair to the corporation unless it is proven not to be fair by a preponderance of the evidence," (Senate Minutes 8).

supports that the transactions in this litigation are not governed by Section 55-8-11, before or after the 2018 Amendment, because the contracts at issue do not concern compensating directors for services performed while acting in the capacity of a director. The Court is not then required to consider Plaintiffs' remaining arguments, including that Throneburg is somehow entitled to the benefit of Section 55-8-11 even though he is not a director.

## VI.    CONCLUSION

42.    Having fully considered the plain language of Section 55-8-11, external commentary regarding the 2018 Amendment, the parties' briefs and arguments, and other appropriate matters of record, the Court, in the exercise of its discretion, finds and concludes that Plaintiffs have failed to demonstrate that the Court has misapplied applicable law or that the Court's Summary Judgment Opinion contains clear error or should be modified in any respect to avoid manifest injustice.

43.    The burden to prove the fairness of the employment contracts to Medflow at the time they were entered into remains on Throneburg, Ehmann, and on Schiffli, if he is found to have been a de facto officer at the time he entered into his contract.

44.    Accordingly, Plaintiffs' Motion is DENIED.

IT IS SO ORDERED, this the 6th day of February, 2019.

/s/ James L. Gale
James L. Gale
Senior Business Court Judge